# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SREAM INC., et al., | Case No.: 1:18-cv-0994 - DAD – JLT |
| Plaintiffs, | ORDER DIRECTING SREAM, INC. TO PROVIDE SUPPLEMENTAL BRIEFING RE ITS STANDING FOR CLAIMS ARISING UNDER THE LANHAM ACT |
| v. | |
| SARAHA CORP., | |
| Defendant. | |

Sream, Inc., and RooR International BV assert that Saraha Corp. is liable for trademark infringement and counterfeiting of the RooR trademarks. (*See* Doc. 1 at 1; Doc. 10-1 at 6) Plaintiffs now seek the entry of default judgment against Saraha. (Doc. 10) For the following reasons, Sream is ordered to file supplemental briefing on its standing in this action and ability to seek default judgment.

**II.     Background**

Plaintiffs assert that Martin Birzle is a designer and manufacturer of smokers' products—including "borosilicate jointed-glass water pipes, parts, and accessories related thereto" — which Mr. Birzle sells under the trademark "RooR." (Doc. 1 at 3, ¶ 9) Plaintiffs report that though Mr. Birzle is based Germany, the RooR-branded products "are widely recognized internationally and are highly renowned for their ornate and innovative characteristics." (*Id.* at 3-4, ¶ 9) According to Plaintiffs, "the RooR brand is one of the leading companies in the industry, and has garnered numerous awards and recognition for its innovative products and designs." (*Id.* at 4, ¶ 9)

1

According to Plaintiffs, "As a result of the continuous and extensive use of the trademark 'RooR,' Mr. Birzle was granted valid and subsisting federal statutory and common law rights to the RooR trademark. Mr. Birzle then assigned to [RooR International BV] all the rights associated with the RooR trademark, retroactively." (Doc. 1 at 4, ¶ 11) Plaintiffs assert, "The retroactive assignment to [RooR International BV] was duly recorded with the United States Patent and Trademark Office on January 10, 2018." (*Id.*)

Plaintiffs allege RooR International BV ("RIBV") has the rights to several United States trademarks, including the word "RooR" and its logo in association with goods. (Doc. 1 at 4-5, ¶12) Plaintiffs contend that pursuant to a licensing agreement between Mr. Birzle and Sream, "since 2013, Sream has been the exclusive licensee for the RooR Marks within the United States." (*Id.* at 5, ¶¶13-14) According to Plaintiffs, "pursuant to the License Agreement, Sream has been granted all rights to sue to obtain damages and injunctive relief for past and future infringement of the RooR Marks in the United States," and the enforcement rights "are tantamount to those of an assignee, as contemplated by trademark law." (*Id.*, ¶ 16) Further, Plaintiffs assert the License Agreement "appoints Sream as the trademark owner's legal representative to police and enforce all rights in the RooR Marks within the United States." (*Id.*)

Plaintiffs report that "[u]nder the License Agreement, Sream also advertises, markets, and distributes water pipes, parts, and accessories related thereto and other smokers' articles in association with the RooR Marks." (Doc. 1 at 6, ¶ 15) They assert that "Sream has over a thousand authorized distributors nationwide," including the state of California. (*Id.*, ¶ 19) Plaintiffs allege that consumers are "willing to pay higher prices for genuine RooR branded products," such that "a RooR brand 45 cm water pipe retails for $300 or more, while a non-RooR branded product of equivalent size will usually sell for less than $100." (*Id.* at 6-7, ¶ 20)

According to Plaintiffs, "Saraha-Inc has, without consent of the Plaintiffs, offered to sell and sold within the United States (including within this judicial district) water pipes that were neither made by the Plaintiffs nor by a manufacturer authorized by the Plaintiffs." (Doc. 1 at 7, ¶ 23) Plaintiffs assert that an "investigator purchased a glass water pipe with a RooR Mark affixed to it, from Saraha-Inc, for a cost of $35.00." (*Id.* at 8, ¶ 24) However, upon inspection the company determined the water pipe

"was a Counterfeit Good with an Infringing Mark affixed to it." (*Id.*, ¶ 25) Plaintiffs contend the products sold by Defendant "diminished the goodwill of the RooR Marks", and cause confusion to consumers. (*id.*, ¶¶ 28-29, 40)

## II. Article III Standing

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). The Ninth Circuit explained, "[T]he Constitution mandates that prior to our exercise of jurisdiction there exist a constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (quoting *Ry. Mail Assoc. v. Corsi*, 326 U.S. 88, 93 (1945)). To satisfy the "case or controversy" requirement, a plaintiff must establish standing under Article III to bring suit. *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010); *see also Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 938 (2007) ("standing is an essential and unchanging part of the case-or-controversy requirement of Article III"). To establish standing—and thus show an actual case or controversy—a plaintiff "must demonstrate (1) an injury-in-fact, (2) causation, and (3) a likelihood that the injury will be redressed by a decision in the plaintiff's favor." *Human Life,* 624 F.3d 1000 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

## III. Standing under the Lanham Act

"To establish standing to sue for trademark infringement under the Lanham Act, a plaintiff must show that he or she is either (1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008). The Ninth Circuit explained, "The law is well settled that there are no rights in a trademark alone and that no rights can be transferred apart from the business with which the mark has been associated." *Mister Donut of Am., Inc. v. Mr. Donut, Inc*., 418 F.2d 838, 842 (9th Cir. 1969).

Significantly, this Court recently acknowledged that "a number of courts have found that Plaintiff [Sream] does not have standing to bring suit under the Lanham Act based on the[] [RooR] trademarks." *Sream, Inc. v. Dia*, Case No. 1:18-cv-00387-AWI-SAB, 2018 U.S. Dist. LEXIS 105939

*2 (E.D. Cal. June 25, 2018) (taking judicial notice of cases finding Sream lacked standing under the Lanham Act). The Court noted that the trademark license agreement with Sream "established that [Sream] is not an assignee with standing to sue under section 1114." *Id.*, citing *Sream, Inc. v. Grateful J'S, Inc.*, No. 17-60458-CIV, 2017 U.S. Dist. LEXIS 217621, 2017 WL 6409004, at *4 (S.D. Fla. Oct. 13, 2017).

In *Grateful*, the defendant argued that Sream "does not have a legally-protected interest in the at issue trademarks," because the trademarks were registered to Mr. Birzel, not Sream. *Id.*, 2017 WL 6409004, at *3. The court noted that a cause of action under Section 1114 "is available only to 'the registrant,'" which included "the legal representatives, predecessors, successors and assigns of such applicant or registrant." *Id.*, quoting 15 U.S.C. §§ 1114(1), 1127. Thus, the court noted that "standing to sue depends largely on the rights granted to the licensee under the licensing agreement." *Id.* at *4. Reviewing Sream's license agreement, the court found:

> First, the Trademark License Agreement does not constitute an assignment of the Marks, as Birzle retains important rights under that Agreement. For example, in the "Ownership" provision of the Agreement, Plaintiff agrees that it will do nothing inconsistent with Birzle's ownership of the Marks or challenge Birzle's rights under the Marks. (Trademark License Agreement ¶ 2.1.) Under the same provision, Birzle explicitly retains ownership of the goodwill of the Marks. (Id.) Plaintiff also agrees to limit its use of the Marks to the products listed in Schedule B, and in accordance with Birzle's "Brand Image Policy" attached as Schedule C. (Id. ¶¶ 2.2, 3.5.) Compliance with these restrictions is determined at the sole discretion of Birzle, who has the right to inspect any products manufactured or sold by Plaintiff. (Id. ¶ 3.2.) Additionally, Plaintiff is required to pay Birzle a 12.5% royalty of gross sales per calendar month. (Id. ¶ 5.1.) And importantly, the Agreement limits Plaintiff's use of the Marks to the United States and permits Birzle to use the Marks anywhere else. (Id. ¶ 3.1.)

Considering these factors, the Court determined the Licence Agreement did not constitute an assignment of the Marks, and Sream "was not an assignee with standing to sue" under sections 1114 and 1116. *Id.* at *4 (emphasis in original).

As in *Grateful*, Sream relies upon the License Agreement to establish its rights as a plaintiff in this case. Sream seeks to establish liability under Sections 1114 and 1116 for willful trademark infringement and counterfeiting, and seeks damages for these violation under the Lanham Act in the motion for default judgment. (*See* Doc. 10-1 at 11; Doc. 1 at 11-14) However, based upon the prior findings of several courts, it appears Sream lacks standing to prosecute these claims or to seek damages for the violations.

## IV. Conclusion and Order

Based upon the foregoing, the Court **ORDERS**:

1. Within seven days of the date of service of this order, Plaintiffs **SHALL** file supplemental briefing on Sream's standing to prosecute claims under Sections 1114 and 1116 of the Lanham Act, and the ability of Sream to seek default judgment for these claims; and

2. Plaintiffs are advised that failure to comply with this order will result in the recommendation that the Sream's claims arising under Sections 1114 and 1116 be dismissed without prejudice.

IT IS SO ORDERED.

Dated: **October 23, 2018**         **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE